IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| SANDRA NEWMAN ELIAS, § | | |
| CONSERVATOR OF THE ESTATE § | | |
| OF GLADYS SALLOUM NEWMAN § | | PLAINTIFF |
| § | | |
| v. § | | Civil Action No. 1:04CV663-LG-RHW |
| § | | |
| § | | |
| GREGORY HOLYNE NEWMAN § | | DEFENDANT |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON ISSUES
TRIED WITHOUT A JURY PURSUANT TO FED. R. CIV. P. 52**

THIS CAUSE came before the Court on May 2, 2007, for trial without a jury pursuant to FED. R. CIV. P. 52. This is a diversity case requiring application of the law of the State of Louisiana. After careful consideration of the testimony presented at trial and the exhibits introduced into evidence, the Court finds that the Defendant, Gregory Newman has proven that Gladys Salloum Newman intended to give, and ultimately transfer to him 61,052.65 units of UIH stock and a naked interest in certain funds in her SII account in the amount of $200,670.00. The Court further finds that the Plaintiff, Sandra Newman Elias, has failed to demonstrated that the donations made by Gladys Salloum Newman to Gregory Newman were the product of undue influence, breach of fiduciary duty, or fraud.

**FINDINGS OF FACT**

Gladys Salloum Newman ("Gladys") was married to Holyne Newman ("Holyne"), and they resided in Franklinton, Louisiana. Holyne and Gladys had three children: Sandra, Gregory, and Cynthia. Holyne and his son, Gregory, both served on the Board of Directors of United Investments Holding, Inc., ("UIH") and some of Holyne's stock certificates with UIH were in the name of "Holyne or Gregory Newman." Additionally, several of Holyne's mutual fund accounts

listed Gregory and Holyne as "joint tenants," "tenants in common," or "joint tenants with rights of survivorship." One promissory note from UIH that was in the possession of Holyne was made payable to "Gladys or Holyne or Gregory H. Newman." Another unsigned promissory note dated May 1, 1991, in the sum of $100,000 was made payable to "Holyne or Gregory H. Newman."

Holyne died in 1995, and all of the above-described stock certificates, mutual fund accounts, and promissory notes were inherited by Gladys as dictated by Holyne's will and Louisiana's Succession Law. Holyne and Gladys' daughter, Cynthia, died in approximately 1998, leaving one child, Barry John ("B. J.") Muldrey.

The evidence tends to show that Gladys wanted to carry out Holyne's wishes that certain property be inherited by Gregory and, as a result, she decided to transfer property to Gregory. On April 23, 2001, Gladys signed over in blank a stock certificate for 61,052.65 units of UIH stock. She and her son, Gregory, took the certificate to a neighbor, Susan Corkern's home, so that she could witness Gladys' signature on the certificate. The stock certificate was later turned in at UIH, and was reissued solely to Gregory. On October 3, 2001, Gladys signed a Ratification of Donation of the 61,052.65 units of UIH stock to Gregory. The Ratification of Donation was prepared by Lamar Richardson, an attorney, using information provided to him by Michael Burris, Gladys' certified public accountant. Richardson testified that he spoke with Gladys concerning the Ratification, and that she was very familiar with the document and understood the transaction. He further testified that she exhibited no reluctance in signing the Ratification.

On June 21, 2002, Gladys executed a Donation *Inter Vivos* that transferred a naked interest in a SII Investments Account to Gregory and reserved a usufructory interest for life. The Donation *Inter Vivos* was witnessed by Michael Burris and Michael Andries, and was notarized by an attorney, E. B. Dittmer. Andries testified that Gladys was alert and attentive while they

-2-

were discussing the transaction. The written Donation *Inter Vivos* provided that the SII account had a balance of $200,670.00. On the same day, she signed a document transferring the funds in her Merrill Lynch account to the SII account. On July 11, 2002, Gladys signed a check in the amount of $100,000.00 made payable to the SII account. The check was filled out by Burris, and represented the funds that she had received from a promissory note issued by UIH. Another promissory note was cashed in during the summer of 2002, and a check in the amount of $100,541.67 was made payable to Gladys or Gregory Newman. Gregory endorsed the check, and deposited it in his business account. Gregory wrote two checks on his business account, one of which was made payable to the SII usufructory account in the amount of $50,000.00, and another that was made payable to a separate SII account solely owned by Gladys in the amount of $50,000.00. Gregory testified that he overlooked the remaining $541.67, and he has not returned Gladys' portion of those funds. As a result of these three transactions, the SII account eventually had a balance of $283,000.00 by August of 2002.

Michael Burris testified that all of the donations by Gladys appeared to be voluntary. He also testified that he and Gladys frequently discussed her desire that her late husband's wishes be carried out by giving certain property to Gregory. Gregory testified that he never attempted to coerce his mother and that he never yelled at her or made her cry. According to Gregory, he merely asked her to carry out what he believed to be his father's wishes.

In 2003, Gladys moved to the Methodist Seashore Manor in Biloxi, Mississippi. Her daughter, Sandra Elias, was appointed as conservator of Gladys' estate, in February of 2004. In March of 2004, the Chancery Court of Harrison County, Mississippi, authorized a lawsuit on behalf of the conservatorship against Gregory in an attempt to recover the donations made to Gregory by Gladys. On April 8, 2005, Gladys' deposition was taken, and she testified that she

may have been doing what she thought was right when she gave the gifts to Gregory.  However, at other times, Gladys gave testimony that she intended for her property to be divided equally among her three children.  Gladys did not appear at the trial due to her age and health.

## **CONCLUSIONS OF LAW**

Under Louisiana law, "[a] donation *inter vivos* (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it."  LA. CIV. CODE ANN. art. 1468.  Donative intent must be present in order for a donation to be valid.  *Rose v. Johnson*, 940 So. 2d 181, 184 (La. Ct. App. 2006).  The donee has the burden of demonstrating donative intent by "strong and convincing evidence."  *Thomson v. Thomson*, 778 So. 2d 736, 739 (La. Ct. App. 2001).   A litigant's testimony in his own favor as to donative intent is received with great caution, and cannot serve as a basis for judgment unless strongly corroborated.  *Fogg v. Fogg*, 571 So. 2d 838, 842 (La. Ct. App. 1990).  Donative intent "is an invisible thing existing only in the donor's mind, however, where an authentic act is required, the intent can be inferred from the execution of the authentic act."  *Anderson v. Aetna Life & Casualty*, 535 So. 2d 1070, 1073 (La. Ct. App. 1988); *see also Phillipe v. Baker*, 2007 WL 914636 at *3 (La. Ct. App. Mar. 28, 2007).  An authentic act is the signing of a document before a notary and two witnesses.  *Brown v. Estate of Brown*, 635 So. 2d 255, 259 (La. Ct. App. 1994).  The general rule, under Louisiana law, is that an authentic act is full proof of the agreement contained therein.  *Anderson*, 571 So. 2d at 1073.  LA. CIV. CODE ANN. art. 1536 provides that an authentic act is required for every donation *inter vivos* of immovable property or incorporeal things.  Accounts on deposit and stock certificates are incorporeal movables.  *Kanz v. Wilson*, 703 So. 2d 1331, 1338 (La. Ct. App. 1997)(holding that accounts on deposit are incorporeal); *Moncrief v. Succession of Armstrong*, 939 So. 2d 714, 721 (La. Ct. App. 2006)(noting that stock

certificates are incorporeal). However, money is a corporeal movable that can be donated by manual gift, which is defined as delivery by which the donor relinquishes control or dominion over the property and places it in the dominion of the donee irrevocably. *Thomson v. Thomson*, 778 So. 2d 736, 739 (La. Ct. App. 2001). Donations *inter vivos* by manual gift require the simultaneous occurrence of donative intent and actual possession by delivery. *Montet v. Lyles*, 638 So. 2d 727, 730 (La. Ct. App. 1994).

In this case, Gladys made two separate written transfers by authentic act to Gregory. First, the stock certificate and second, the naked interest in the SII account. Therefore, under Louisiana law, the Court can infer donative intent from those authentic acts. Here, the authentic act only applied to $200,670 of the $283,000 ultimately deposited in the SII account. The Defendant presented the testimony of witnesses who stated that all of the transactions were fully explained to Gladys, and that she was alert, attentive, and understood the transactions. Michael Burris further testified that Gladys acted voluntarily. However, this testimony only pertained to conversations with Gladys that occurred concerning the authentic acts that were executed, and thus, the testimony does not support a finding of donative intent as to the subsequent deposit of an additional $82,330.00 in the SII account. The Court does not find Defendant's evidence of donative intent persuasive as it pertains to the additional $82,330.00 that was deposited into the account. In fact, the Court finds that the best evidence of Gladys' donative intent is what was actually represented in the written document.

Plaintiff attempted to rebut the inference of donative intent using Gladys' deposition testimony that she would like for her estate to be divided three ways. However, Gladys' testimony only reveals her present intent, since she claims that she does not remember making the gifts during 2001 and 2002. Therefore, Plaintiff has failed to rebut the inference of donative

intent. As a result, the Court finds that Gladys intended to donate the stock and a naked interest in an account with a balance of $200,670.00. However, the Court finds that Gregory has not demonstrated by strong and convincing evidence that Gladys intended to donate a naked interest in the additional $82,330.00 that was eventually deposited in the SII account.

Plaintiff also argued that the donations should be voided since they were the product of undue influence and/or fraud. The person seeking to set aside a donation *inter vivos* has the burden of proving fraud or undue influence by clear and convincing evidence. LA. CIV. CODE ANN. art. 1483. The clear and convincing evidence standard requires a party to prove that the existence of either fraud or undue influence is highly probable or much more probable than its non-existence. *Succession of Culotta*, 900 So. 2d 137, 142-43 (5th Cir. 2005). In order to prove fraud, a party must show that there was an intent to defraud or gain an unfair advantage, and a resulting loss or damage. *Rose*, 940 So. 2d at 188 (quoting LA. CIV. CODE ANN. art. 1953). In order to prove undue influence, the plaintiff must prove that the donation *inter vivos* was "the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor." LA. CIV. CODE ANN. art. 1479. "Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of the donor and substitute someone else's volition for his own." *Succession of Jack Berman*, 937 So. 2d 437, 440 (La. Ct. App. 2006)(quoting LA. CIV. CODE ANN. art. 1479, Comment (b)).

In support of the argument that the donations were the product of fraud and/or undue influence, Plaintiff relied upon Gladys' testimony that she would like for her estate to be divided equally among her children. She also relied on the testimony of Gladys' former neighbor, Susan Corkern, who testified that Gladys had told her that she wanted her estate divided equally among

her children.  Additionally, Gladys' friend, Colleen Magee, testified that she heard Gregory yelling at Gladys over the phone and that the phone conversation caused Gladys to cry. However, Mrs. Magee testified that she did not know what Gregory and Gladys were discussing during that phone call.  Finally, Plaintiff relies upon four wills that Gladys has executed, which specified that her estate should be divided equally among her three children.

In this case, the person in the best position to shed light on the questions of donative intent and undue influence is Gladys.  Unfortunately, her deposition testimony is not helpful. Whether Gladys' lapse of memory is genuine or whether her testimony is influenced by a mother's desire to reunite a discordant family, the result is the same.  The finder of fact can weigh and consider only the facts presented at trial.  In the Court's opinion, the evidence presented by Plaintiff does not meet the exacting burden of demonstrating undue influence or fraud by clear and convincing evidence.

Finally, Plaintiff contends that the donations were the product of a breach of fiduciary duty owed to Gladys.  Plaintiff argued that Michael Burris was acting as Gregory's agent during the transactions, and that he breached the fiduciary duty he owed to Gladys.  However, there was no evidence that Burris was acting as Gregory's agent, and Burris testified that Gladys, not Gregory, was his client.  Plaintiff also argued that Gregory breached fiduciary duties he owed to Gladys by virtue of a power of attorney.  However, Plaintiff stipulated that Gregory did not abuse the power of attorney.  Therefore, Plaintiff did not demonstrate a breach of a fiduciary duty for which Gregory is liable.

## CONCLUSION

It is the Court's opinion that Plaintiff has failed to meet her burden of proof, demonstrating by clear and convincing evidence, that the donations made by Gladys Salloum

Newman to Gregory Newman were the product of undue influence or fraud. The Court also finds that Plaintiff has not demonstrated any breach of a fiduciary duty for which Defendant is liable. Defendant has the burden of demonstrating that Gladys intended to make the donations. In the opinion of the Court, Defendant has established that Gladys intended the donation of the 61,052.65 units of UIH stock and a naked interest in the SII account in the amount of $200,670.00. Defendant has failed to establish Gladys intended to create a naked interest in the additional funds deposited into the SII account in the amount of $82, 330.00.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that the Plaintiff is entitled to a Judgment to recover from the Defendant the naked interest in Gladys Newman's SII account in the amount of $82,330.00  All other relief is denied. The Court will enter a judgment accordingly pursuant to FED. R. CIV. P. 58.

**SO ORDERED AND ADJUDGED** this the 30th day of May, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE